Denio, J.
 

 I consider it well settled that chattels which have been mortgaged may, notwithstanding, be seized upon execution against the mortgagor, where he is in possession, and at the time of the seizure is entitled to the possession for a definite period against the mortgagee. This was assumed to be the law, in
 
 Mattison
 
 v.
 
 Baucus,
 
 in this court; (1
 
 Comst.
 
 295;) and the principle has been repeatedly recognized by the former and the present supreme court and the late court for the correction of errors, and has never, so far as I know, been denied by any court in this state.
 
 (Otis
 
 v.
 
 Wood,
 
 3
 
 Wend.
 
 498, 500,
 
 per Savage, C. J, citing McCracken
 
 v.
 
 Luce, unreported; Smith
 
 v.
 
 Dunning,
 
 7
 
 id.
 
 135;
 
 Bailey
 
 v.
 
 Burton,
 
 8
 
 id.
 
 339, 348;
 
 Wheeler
 
 v.
 
 McFarland,
 
 10
 
 id.
 
 318;
 
 Randall
 
 v.
 
 Cook,
 
 17
 
 id.
 
 53;
 
 Bank of Lansingburgh
 
 v.
 
 Crary,
 
 1
 
 Barb. S. C. R.
 
 542.) The defendants did not therefore do an illegal act in seizing the property on the execution against Michelin the mortgagor. But with a knowledge
 
 *498
 
 of the plaintiff’s mortgage, the defendant Carnley, as sheriff, by the procurement of the other defendant, sold the property, generally, without any recognition of the plaintiff’s lien, and did not in terms, as it is argued he ought to have done, limit the sale to the interest of the judgment debtor. At the time of the sale, as well as when the seizure was made, Michelin was entitled to the possession, no default in paying the mortgage having occurred, and the time for making the first payment not arriving until more than three months afterwards; and the mortgage moreover contained an express stipulation, that until default the mortgagor should be entitled to the possession. I may here mention, in order to present all the material facts in the same connection, that this action was not commenced until after a default in payment had taken place ; and that before bringing the suit, the plaintiff demanded the articles of the defendants. They could not, however, give them up, for they were in the hands of the purchaser at the sale.
 

 Assuming the chattel mortgage to have been a valid instrument, (and I see no reason to doubt but that it was such,) the sheriff had a right to sell the interest of the mortgagor and to deliver the property to the purchaser, and the purchaser was warranted in taking it into his possession and in using it for the purposes to which it was adapted, until the day of payment; and he had moreover a right to pay the mortgage debt and thus extinguish the lien. Now, whether the sheriff assumed to sell the whole interest, ignoring the existence of the mortgage, or limited the sale totthe mortgagor’s interest, expressly recognizing the mortgage and selling subject to it, the rights of the purchaser and of the mortgagee would in either case be precisely the same. The mortgagee would not be deprived of his interest by a sale which did not recognize the mortgage, nor would the purchaser under such a sale acquire any thing more than the interest which was bound by the execution, to wit, the right of the mortgagor to the possession, and the equity of redemption; and these would be the respective rights of the parties if the sale was limited in terms to the interest which could effectually be sold, that is, the
 
 *499
 
 title of the mortgagor. The effect of the sale oh execution against the mortgagor would be the same as a voluntary transfer of the mortgaged articles by the mortgagor to a third'person. Such a disposition of them would not oust the mortgagee, whether his interest was repudiated or was recognized. Such sales, whether judicial or private, pass such title as the vendor, or party against whom the authority to sell exists, had to part with, and no other. The mortgagee, it is true, may be in a worse position, in some respects, by the property passing into other hands, for he must keep sight of it, so as to be able to find and take possession of it when his title shall become absolute by a default in payment. But he is not legally prejudiced, for the mortgagor may, when not restrained by the terms of the mortgage, remove it from place to place at his pleasure. He has the same right to do so which a purchaser on execution against him has. I do not therefore see any reason why such a sale as was made in this case should be considered a conversion of the property, or a disturbance of the mortgagee’s title. That title was not divested or interfered with, and there was no disposition of the
 
 corpus
 
 of the property which was not authorized by law. When the mortgagee’s title became absolute he could claim his goods in the hands of the purchaser, or maintain an action if they should be withheld from him. Upon principle I dm therefore of opinion that the judgment of the superior court cannot be sustained.
 

 I do not think the case of
 
 Wheeler
 
 v. McFarland, (10
 
 Wend.
 
 318,) which is relied on by the plaintiff’s counsel, tends to prove his position. The property which was^ in question in that case, was pledged for the payment of labor which had been bestowed upon it, to the full value ; and the view which the court took of the case was that the pledgee was in possession, as he must have been, to constitute a valid pledge. The execution was against the pledgor, and the court held that the sheriff who had seised and-advertised the property was liable in replevin to the pledgee, because in his advertisement he offeréd the whole property, and did not propose to sell subject to the plaintiff’s lien, but in defiance of it. The authority to sell the pledgor’s interest is given
 
 *500
 
 by statute, (2
 
 R. S.
 
 366, § 20;) and does not contemplate that the purchaser shall take possession by virtue of the sale, until he has Complied with the terms and conditions of the pledge. It does not authorize any thing hostile to the interest or possession of the pledgee. The court in that case considered the levy and advertisement as equivalent to divesting the plaintiff of his possession ; and as the sheriff had no right to do that, and as the plaintiff could not be deprived of his possession, unless temporarily, for the purpose of a sale, until his lien was extinguished, it was held that the action was sustained against the sheriff. The principle adjudged has no application to a case like the present, where the judgment debtor was entitled to the possession, and the party seeking to recover against the officer had no right to the possession at the time of the sale. The judgment itself was reversed in the court of errors, on the ground that the' plaintiff had parted with the possession before the levy. (26
 
 Wend.
 
 467.) But the principle of law which was decided may nevertheless be correct.
 
 (See Bakewell
 
 v.
 
 Ellsworth,
 
 6
 
 Hill,
 
 484;
 
 Stief
 
 v.
 
 Hart,
 
 1
 
 Comst.
 
 20.)
 

 The cases which have been decided respecting the sale of the goods of copartners or joint owners, upon executions against one partner or joint owner, have a stronger analogy to this case; but I think they do not govern it.
 
 (Phillips
 
 v.
 
 Cook,
 
 24
 
 Wend.
 
 389 ;
 
 Waddell
 
 v.
 
 Cook,
 
 2
 
 Hill,
 
 47
 
 and note ; Walch
 
 v.
 
 Adams,
 
 3
 
 Denio,
 
 125.) All the partners, or joint owners, have an equal right to the possession with the one against whom the execution issues. The interruption of that possession is an injury, which can be only justified by the process.- By assuming to sell the whole interest, when the authority extends only to an aliquot share, and delivering possession to the purchaser pursuant to such sale, the other owners are immediately divested of a concurrent right of possession. The authority to disturb the possession of the other owners is conferred by law, and to be effectual must be exercised in the manner which the law directs; and doing it in any other manner is an abuse of the authority, and renders the officer a trespasser from the beginning. This is the
 
 *501
 
 ground upon which the doctrine is placed by Judge Cowen in
 
 Waddell
 
 v.
 
 Cook,
 
 and upon this principle only can the decision be sustained. In the case under review, there is, as before remarked, no disturbance of any present right of possession. The mortgagee is in the same precise situation after the sale as before. Ho possession is invaded and no right is disturbed. It would be strange if in such a case a trespass had been committed.
 

 The interest of a mortgagee of chattels out of possession and without an immediate right to the possession, resembles in some respects that of a lessor of goods for a limited term. The lessee in such a case has the present possession in fact and by right, but the lessor has the ultimate property, and consequently the right of possession at the end of the term. The title of the lessee is vendible on execution: but it is not necessary that in conducting the sale, the officer should specify that he sells the interest of the tenant only. A sale in general terms, such as was made of the mortgaged property in this case, passes such title as the lessee had; and inasmuch as the lessor is in no respect injured, he can maintain no action against the sheriff for selling in that manner. That precise question was decided in
 
 Van Antwerp
 
 v.
 
 Newman,
 
 (2
 
 Cowen,
 
 543,) Chief Justice Savage, in giving the opinion of the court, remarking that the sheriff had authority to sell the interest of the lessee, but that it was not in his power to divest the lessor of his property in the goods, and that he had not done so. The case does not seem to me distinguishable from the one under consideration.
 

 There is another difficulty in the plaintiff’s case. How can the defendants be held to be trespassers, for interfering with property, to the possession of which the plaintiff at the time of the act done had no right? In
 
 Ward
 
 v.
 
 Macauley
 
 (4
 
 T. R.
 
 489,) the plaintiff had demised a house ready furnished, and during the term the lessee had a judgment recovered and an execution issued against him, upon which a portion of the furniture was seized by the sheriff; and the landlord brought trespass against him. The court held that the plaintiff could not recover, on the ground that he was not in possession when the alleged trespass was
 
 *502
 
 committed; but Lord Kenyon, Ch. J., intimated that trover might have been maintained. A similar question again arose in
 
 Gordon
 
 v.
 
 Harper,
 
 (7
 
 id.
 
 9,) where the action
 
 was
 
 trover against the sheriff for selling goods belonging to the plaintiff in the possession of his tenant; and it was held that the action could not be maintained. Lord Kenyon said that what had fallen from him in
 
 Ward
 
 v.
 
 Macauley,
 
 to the effect that trover would lie in such a case, was an
 
 extra-judicial
 
 opinion, to which, upon further consideration, he could not subscribei Ashhurst, J., said that to maintain trover, the plaintiff must have property in the thing, and a right of possession, and that unless both these rights concurred, the action would not lie. Although all the forms of actions are abolished, still we must, in determining the law on a . particular subject, in the first place inquire under what forms the right claimed "was formerly asserted, and then ascertain from adjudged cases whether an action could be sustained upon the facts of the case under consideration, in any form heretofore used» Trover or trespass would have been appropriate remedies for the injury complained of in this case, if any action could have been sustained. No injury to the property itself was proved, but the complaint was that the defendants had illegally deprived the plaintiff of its possession. On the ground that the defendants were justified by the process in doing what they are proved to have done, and the further ground that the plaintiff had not sucha right of possession at the time of the alleged injury as to warrant him in bringing this action, we are of opinion that the judgment of the superior court was erroneous and ought to be reversed.