[Decided February 2, 1887.]

## LEWIS BYRD, SHERIFF, ETC., *v.* JOHN FORBES.

1. CHATTEL MORTGAGE — INTEREST OF MORTGAGEE. — A chattel mortgage in Washington Territory is a mere security, under which no title can pass except by foreclosure and sale.

2. SAME — VALIDITY — STOCK OF GOODS. — A chattel mortgage, after describing the property as a certain stock of goods "marked throughout with the private tag and cost-mark" of A, provided that the mortgagor should retain possession and carry on the business, and keep up the stock of goods, those sold to be disposed of for the sole use and benefit of the mortgagee, either by applying the money so obtained to payment of the mortgage debt, or in keeping up the security or adding to the stock: *held*, that the mortgage was void for indefiniteness, and as being a fraud on creditors of the mortgagor.

3. EXECUTION — LEVY ON MORTGAGED PERSONALTY — NOTICE TO MORTGAGEE. — The provisions of section 1990, Code of Washington, relating to the giving of notice to the mortgagee of chattels by the sheriff when levying upon the same under process issued against the mortgagor, are mandatory, but do not affect the validity of the sale.

4. SAME — FAILURE TO NOTIFY — LIABILITY OF SHERIFF. — A sheriff is not liable for non-compliance with section 1990, Code of Washington, where it does not appear that being well informed of the mortgagee's address he failed to notify him of a levy upon mortgaged chattels, and where it does not appear that the mortgagee lost his security, or suffered damage from the sheriff's acts.

ERROR to the District Court holding terms at Tacoma. Second District.

The complaint alleged that on January 2, 1885, plaintiff, John Forbes, was owner of and in possession of a stock of merchandise, and that on that day plaintiff agreed with one Harris, a merchant engaged in business, that the latter should remove the stock to his place of business, and sell the same as plaintiff's agent, accounting to plaintiff for the proceeds from month to month, until two thousand dollars and interest was paid to plaintiff, after which the remaining stock should be Harris's property. Harris was to give his notes specifying the time and manner of making such payments, to be secured by mortgage on the stock; and in case of default of payment, plaintiff was authorized to take pos-

session of the same.  To identify the goods, Harris was
to keep the same separate from his own, and mark them
with plaintiff's tag and private mark.  To carry out said
contract, the goods were delivered to said Harris on said
January 2, 1885; and on the same day he executed to
plaintiff eleven promissory notes, aggregating two thou-
sand dollars, payable one each month, the last payable
one year after date.  On the same day, Harris executed
his mortgage on said stock of goods in the usual form to
secure payment of said notes, conditioned as follows: —

"It is expressly understood and agreed, by and between
mortgagor and mortgagee, that until default be made in
the payment of any of said promissory notes, and so
long as mortgagor shall keep up his stock of goods so as
to be good and ample security for the payment of said
principal and interest of the said promissory notes, that
the said mortgagor may and shall have the right to re-
tain possession of said mortgaged property, and to sell
and dispose of the same in the usual course of his retail
business and trade (or in job lots for the sole use and
benefit of mortgagee), until said promissory notes are
fully paid, and said mortgage debt is fully paid and sat-
isfied.

" It is also expressly agreed between the mortgagor
and mortgagee that the said mortgagor shall not sell or
dispose of his merchandising business, and stock in
trade, and discontinue the business of merchandising,
but shall keep a good and sufficient stock of merchandise
such as above enumerated, and continue in the merchan-
dising business in the city of Tacoma, in said county of
Pierce, until said notes and the debt secured by this
mortgage is fully paid and satisfied; and in case default
shall be made in the payment of the principal, or any
part thereof, or of any interest, as provided in said prom-
issory notes or this mortgage stipulated, or in case of any
attempt to sell said stock of goods other than as above
provided, or in case of any attempt by mortgagor to re-

move said stock of goods, or any part thereof, from said Tacoma, until said promissory notes and this mortgage debt are fully paid and satisfied, or in case the said mortgagee shall at any time deem himself unsafe, then, and in such case, it shall and may be lawful for, and the said mortgagor hereby authorizes and empowers, the mortgagee herein, his executors, administrators, assigns, agent, or attorney, with the aid of any person or persons he or they may select, to enter the premises or such other place or places as the said goods and chattels may be placed, and take possession of the same, using all necessary force so to do, and he or they may immediately proceed to sell the same in the manner provided by law, and from the proceeds of such sale pay the whole amount then due upon said promissory notes and mortgage debt, together with an attorney's fee of ten per cent per annum upon the amount which may be due for the principal and interest, together with the costs and charges of making such sale."

The mortgage was duly acknowledged, verified, and recorded on January 5, 1885; that defendant, Lewis Byrd, as sheriff of Pierce County, under a writ of attachment against Harris & Co., of which Harris was a member, at the suit of Fleischner, Mayer, & Co., on January 24, 1885, before any of the notes matured, wrongfully attached said stock of goods, valued at $2,790, to answer the latter's claim against Harris & Co., and that sheriff, under an execution in the same suit, on March 3, 1885, sold the goods to Fleischner, Mayer, & Co.; that Harris was insolvent, and made no payments on his notes. Plaintiff prayed judgment for two thousand dollars and interest. The defendant after certain denials admitted execution of notes and mortgage, and demand by plaintiff, and pleaded affirmatively his writ, and that the mortgaged goods were so intermingled with the goods of Harris that separation was impossible; that the mortgaged goods with plaintiff's consent were a part of the general stock

of Harris & Co., and indiscriminately intermingled, rendering separation impossible; that plaintiff's mortgage was void as against creditors of Harris or Harris & Co., and that defendant sold all right, title, and interest of Harris & Co. to the goods under an execution in the case of Fleischner, Mayer, & Co. The plaintiff in reply denied intermingling of goods, or that the same were part of the stock of Harris & Co., and averred that all the goods, and not the interest of Harris & Co. therein were sold to Fleischner, Mayer, & Co. At the trial the evidence showed that Harris had paid nothing on his notes, and that the value of the goods was $2,690. Proof of notes and mortgage, and issuance of writ, attachment, levy, and sale, was also made. On motion of plaintiff the court instructed the jury to find for plaintiff. Verdict and judgment accordingly. Defendant appealed.

*Mr. Elwood Evans,* for Plaintiff in Error.

A similar mortgage has been held by our Supreme Court to be void as against attaching creditors. The mortgage is void for indefiniteness, and a fraud on the creditors of the mortgagor. (*Wineburgh* v. *Schaer*, 2 Wash. 329; *Robinson* v. *Elliott*, 22 Wall. 523; *In re Morrill*, 2 Saw. 356; *Crook* v. *Stuart*, 7 Fed. Rep. 800; *Ranlett* v. *Bloodgett*, 33 Am. Dec. 603; Herman on Chattel Mortgages, 128, 229, 231, 232, 234–236; *Orton* v. *Orton*, 7 Or. 478.) Mortgaged chattels, which by the terms of mortgage remain in possession of mortgagor, and to the possession whereof he is entitled by the terms of said mortgage, may be taken in execution; and if sheriff levy upon the same while in possession of mortgagor, not liable for trespass. (*Hull* v. *Carnley*, 11 N. Y. 501.) To maintain this action, there must have been in Forbes, at the time of levy, a right to the actual possession. Plaintiff's action is defeated whenever it is established that some one other than plaintiff was owner or entitled to possession of property. (*Krewson* v. *Purdom*, 11 Pac. Rep. 282; *Du-*

*bois* v. *Harcourt,* 20 Wend. 43.) Forbes, in his action against sheriff for converson, not having had possession of the property, had no title or property *then,* neither general nor special. It was simply a right to a lien or demand on happening of a contingency. (*Knowles* v. *Herbert,* 11 Or. 240; *Chapman* v. *State,* 5 Or. 432; *Hotchkiss* v. *McVicker,* 12 Johns. 403; 1 Hilliard on Torts, 491; Williams on Personal Property, 24.) At the time of the levy, the plaintiff had no right to the possession of the mortgaged goods, and until a right of possession had accrued, he could not demand possession. (Jones on Chattel Mortgages, secs. 443, 444.) Until an express condition in the mortgage had been violated, followed by "some affirmative act by the mortgagee, the rights, duties, and obligations of all the parties remain precisely the same as if the mortgage contained no such provision " in favor of the mortgagee. (Herman on Chattel Mortgages, p. 329, sec. 125; Jones on Chattel Mortgages, secs. 374, 375, 443, 444.)

*Mr. John P. Judson* and *Messrs. Taylor & Campbell,* for the Defendant in Error.

The proposition that Forbes could not rightfully demand possession until the mortgagor was in default is not tenable under section 1989 of the Code, nor under the express conditions in the mortgage. (*Hall* v. *Sampson,* 35 N. Y. 274; Jones on Chattel Mortgages, secs. 433, 557, 558; *Saxon* v. *Williams,* 15 Wis. 292; *Worthington* v. *Hanna,* 23 Mich. 530.) At common law, the interest of the mortgagor was not subject to attachment; and it is only by virtue of statutory provisions that such interest can be sold. (Jones on Chattel Mortgages, sec. 555.) Under the Code, the interest of the mortgagor in possession may be sold subject to the mortgage lien. (Code, sec. 1990; Jones on Chattel Mortgages, sec. 556.) This right to sell, being in derogation of common law, must be strictly construed. Before the interest of the mort-

gagor can be sold, the sheriff must serve notice of the intended sale on the mortgagee. (Code, sec. 1990.) A description in a chattel mortgage of the mortgaged property is sufficient if it will enable a third party, aided by inquiries which the instrument itself suggests, to identify the property. (*Knapp, Stout, & Co.* v. *Deitz*, 23 N. W. Rep. 471.) Written descriptions of property are to be interpreted in the light of the facts known to and in the minds of the parties at the time. They are not prepared for strangers, but for those they are to affect. The mortgage informed the world that the goods were all marked with the private "tag and cost-mark" of the mortgagee for identification. (Jones on Chattel Mortgages, sec. 54; *Griffeth* v. *Wheeler*, 2 Pac. Rep. 848; *Smith* v. *McLean*, 34 Iowa, 322; *Yant* v. *Harvey*, 55 Iowa, 421.) Plaintiff in error stands in no better position than the mortgagor; if the mortgagor confused the goods so that they could not be distinguished, the mortgagee may take all, and cannot suffer by his wrongful act. (Jones on Chattel Mortgages, secs. 481, 483; *Merchants' National Bank* v. *McLaughlin*, 2 Fed. Rep. 128; *Stevens* v. *Pence*, 9 N. W. Rep. 215.) In *Wineburgh* v. *Schaer*, 2 Wash. 333, it plainly appeared that the mortgagor had possession of the stock, with power to sell the same, and to apply the proceeds to his own use and benefit, as in his usual course in business. Hence, the decision of our Supreme Court in that case does not apply. (*Hughs* v. *Coy*, 20 Iowa, 399; Jones on Chattel Mortgages, sec. 381; *Hawkins* v. *Hastings Bank*, 1 Dill. 462; *Bracket* v. *Harvey*, 91 N. Y. 214; *Kline* v. *Katzenberger*, 20 Ohio St. 110; *Peiser* v. *Petievlas*, 32 Am. Rep. 621; Boone on Mortgages, sec. 284.) Fraud is a question of fact that must be alleged and proven. Not having tendered such an issue, plaintiff in error cannot complain that it was not submitted to a jury. Fraud was not alleged, and he offered no evidence on the trial of the cause. (*Kruse* v. *Prindle*, 8 Or. 161; *Stam* v. *Kelley*, 88 N. Y. 418; *Thompson* v. *Blanchard*, 4 N. Y. 303.)

Mr. Chief Justice GREENE delivered the opinion of the court.

It is not disputed but that under the statutes of this territory the interest of a mortgagor in mortgaged personal property is subject to attachment. Liability of his interest to be attached exists even in states where the mortgage operates to pass to the mortgagee the title to the goods. (*Hull* v. *Carnley*, 11 N. Y. 501.) *A fortiori*, such liability obtains under our statutes, which clearly will not consist with any other doctrine than that a chattel mortgage is a mere security under which no title can possibly pass except by foreclosure and sale. Such a mortgage is defined as to its nature and effect by the provisions of chapter 141, sections 1986–1999, of the Code, being therein spoken of and treated as giving a lien only and serving for a security, and as needing foreclosure to divest the title of the mortgagor. Sections 618 and 619 of the Code speak of such mortgages as instruments "creating liens," provide for their foreclosure, class them with mortgages of real property, and assimilate the foreclosure of them to that of mortgages on real property, which have been determined by this court to be under our statutes mere securities. (*Parker* v. *D'Acres*, 2 Wash. 439.)

As a general rule, any interest that may be sold on execution is subject also to process of attachment, and it is expressly provided in section 1990 that a mortgagor's interest in goods may be taken in execution. Under our law of attachment, there exists no other way of making the attachment levy upon chattels capable of manual delivery than to take them into custody. (Code, sec. 179.) Section 1990 contemplates such a taking, when it provides that the officer who executes the process shall mail to the mortgagee, "or to his agent, if their post-office is known, a notification of the intended sale at the time such mortgaged property is *seized under said process*, or within five days thereafter," and that "said property

shall not be sold within thirty days *after its seizure*," and that he shall post notices at the time of "*the seizure under said process.*"

The provisions of section 1990 are inconsistent with the idea that after levy by the sheriff the mortgagee can demand and take possession. So, too, are all those provisions of statute which compel us to regard a chattel mortgage as a mere security. The theory upon which at common law, and in some states of this Union, the mortgagee can take possession, and even dispossess the sheriff, is, that the mortgagee is owner, and the sheriff a trespasser. (*Hall* v. *Sampson*, 35 N. Y. 274.) An express stipulation in a chattel mortgage, that the mortgagee may take possession upon a certain contingency, may be good as between the parties to the instrument, so as to allow the mortgagee to take possession from the mortgagor; but it cannot, in face of our statutes, be held to authorize a taking or retaining the possession as against creditors of the mortgagor seeking to attach his interest, or subject it to execution. Under our statutes, an unforeclosed mortgage is a mortgage still, regardless where the possession lies. We are clear that the provisions of section 1990 regarding notification of the mortgagee are mandatory, but do not affect the validity of the sale. This is evident from the consideration that the service of notice is contingent upon the knowledge of the officer as to the residence and post-office of the mortgagee or his agent. A sheriff, like any other man, is liable to be misinformed or mistaken, and if the validity of his doings were to depend upon his knowledge of such facts, the title of the purchaser of the mortgagor's interest would often be illusory. But as these provisions are plainly intended for the benefit of the mortgagee, he has his action against an officer possessed of the requisite information, who fails to comply with the law, and whose failure proximately results in damage to the mortgagee. In the case before us, the complaint

does not state facts sufficient to show that the sheriff is liable for non-compliance with section 1990, for it does not show that the sheriff, being well informed, failed to notify, nor that plaintiff lost his security or suffered any damage from the sheriff's acts. The instrument upon which plaintiff based his right to recover purports to mortgage a certain "stock of goods" marked throughout with "the private tag and cost-mark" of the plaintiff. Following the description of property, it contains the following clauses: "It is expressly understood and agreed by and between the mortgagor and mortgagee that until default be made in the payment of any of the said promissory notes, and so long as mortgagor shall keep up his stock of goods so as to be good and ample security for the payment of the said principal and interest of the said promissory notes, that the said mortgagor may and shall have the right to retain possession of said mortgaged property, and sell and dispose of the same in the usual course of his retail business in trade, or in job lots, for the sole use and benefit of mortgagee, until said promissory notes are fully paid, and said mortgage debt is fully satisfied."

"It is expressly agreed between the mortgagor and mortgagee that the said mortgagor shall not sell or dispose of his merchandising business and stock in trade, and discontinue the business of merchandising, but shall keep a good and sufficient stock of merchandise, such as above enumerated, and continue in the merchandising business in the city of Tacoma, in said county of Pierce, until said notes and the debt secured by this mortgage is fully paid and satisfied; and in case default shall be made in the payment of the principal or any part thereof, or any interest as provided in said promissory notes, or this mortgage stipulated, or in case of attempt to sell said stock of goods otherwise than as above provided, or in case of any attempt by mortgagor to remove said stock of goods, or any part thereof, from said Tacoma

until said promissory notes and this mortgage debt are fully satisfied, or in case," etc.    Also a covenant that the mortgagor will keep the "said stock of goods" insured at his own expense.

It would appear from the entire instrument, and especially from the stipulations above quoted, that the original stock, definitely marked as it would appear to have been, was not to be and continue the only security to which the mortgagee was to look, but that his security was to be this stock and additions.    In short, the instrument was to be a floating mortgage, under the cover of which, from time to time, new stock to an uncertain limit must be and beyond that limit might be introduced. It is to cover all of the mortgagor's stock, however large it may become.    This feature of itself is enough to avoid the instrument, for it would serve to shield any amount of property from creditors other than the mortgagee, without any corresponding lawful advantage to him. But this instrument has another fatal infirmity.    If any of the hypothecated goods are to be sold in course of trade or job lots, the proceeds ought to be applied so as to relieve the rest of the property *pro tanto* from the mortgage.    In the case of *Langert* v. *Brown*, decided at this term, we have upheld a chattel mortgage, by the terms of which a stock of goods was to be sold in the usual course of trade, and the proceeds applied to payment of the mortgage debt until it should be satisfied. But by the terms of the instrument before us now, there is no restriction put upon the disposition of proceeds save what is implied in the agreement that the goods shall be sold and disposed of "for the sole use and benefit of the mortgagee."    It seems to us that this restriction would be as fully met if the proceeds of sales were applied on a new indebtedness as upon the original mortgage debt, or even if they were applied in other ways as the mortgagee might appoint.    This peculiar restriction, taken in connection with the other provisions surround-

ing it, is consistent with and rather suggests the idea that the parties intended the mortgagor to have his option either to apply the proceeds to the satisfaction of the mortgage debt, or to use them in paying for new bills of goods from the mortgagee, so long as the latter did not insist on canceling the older debt. An arrangement like that might be prolonged indefinitely, and would be from the first and all the time palpably unjust to the other creditors, for it would enable the mortgagor, so long as the mortgagee should not press payment of the mortgage debt, to sell the goods as his own, and within a certain range, to appropriate the proceeds to his own purposes for an indefinite length of time. Thus we think the mortgage falls fairly within the principle underlying the case of *Robinson* v. *Elliott*, 22 Wall. 523, followed by us in *Wineberg* v. *Schaer*, 2 Wash. 328.

The judgment of the District Court must be reversed.

Turner, J., and Langford, J., concurred.