RAYMOND M. NORTON, Respondent, *v.* BERNARD R. SHIELDS and ESTHER ABBEY, Appellants.

Fourth Department, November 15, 1916.

Mortgage — sale of mortgaged chattels by mortgagor in possession — title of purchaser — when mortgagee cannot hold mortgagor for impairment of security.

A mortgagor of chattels, rightfully in possession thereof, may sell the property until such time as he makes default, and the purchaser takes title subject to the lien of the mortgage. And this is so, whether or no the purchaser has knowledge of the mortgage, for he takes the same title as the mortgagor had, no more and no less.

Hence a sale of the mortgaged property does not entitle the mortgagee to sue to recover damages on the theory that the mortgagor has wrongfully impaired the security of the mortgage, there being nothing to show that the mortgagor is insolvent or that any deficiency resulting from a foreclosure is uncollectible.

APPEAL by the defendants, Bernard R. Shields and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Oneida on the 10th day of May, 1916, upon the verdict of a jury, and also from an order entered in said clerk's office on the 11th day of May, 1916, denying defendants' motion for a new trial made upon the minutes.

*Charles R. Bradbury,* for the appellants.

*H. C. Sholes,* for the respondent.

KRUSE, P. J.:

The plaintiff seeks to recover damages for the impairment of his chattel mortgage security, by the defendant mortgagors, who sold some of the articles covered by the mortgage. The property sold consisted of farm products, such as hay, oats and straw and several domestic animals upon the farm occupied by the defendants, of which the jury found the value to be $300, but the trial judge evidently regarded that amount excessive, as he reduced the verdict to $200.

The sales were made from time to time, but mostly in the spring of 1914, and all before the mortgage debt became due. Thereafter and on December 1, 1914, the rest of the property was sold at a public sale for $1,269.25 under the power of sale contained in the chattel mortgages. There were two mortgages. The first lien mortgage, amounting at that time to about $800, was paid in full, but the balance of the proceeds was insufficient to pay the second lien mortgage in full. After paying the expenses of sale and the first lien mortgage, there remained a deficiency of about $600.

There is no evidence that the defendant mortgage debtors were insolvent or that the deficiency is uncollectible. Nor is there any evidence of what has become of the property sold by them. The purchasers were known and their identity disclosed upon the trial, and there is nothing to show that the plaintiff could not have followed the property, taken possession of it and sold it.

The complaint contains an allegation that the defendants

sold, secreted or otherwise disposed of a part of the property upon which the chattel mortgages were liens at the time with the preconceived design, intent and purpose of cheating and defrauding the plaintiff and lessening and rendering inadequate the security of the chattel mortgages. Such a fraudulent disposition is a misdemeanor (Penal Law, § 940), and if such a case had been made out I have no doubt the plaintiff would be entitled to recover his damages. Furthermore, no such question was submitted to the jury nor does the verdict rest upon any such basis. While that allegation of the complaint was referred to in the charge, the jury was told that plaintiff had the right to have his security let alone without interference with it by the defendants and that if they interfered with the security by selling or disposing of the property that rendered them liable; that if the defendants disposed of the mortgaged property without the consent at the time of the plaintiff or his acquiescence afterward the defendants would be liable. After exceptions were taken to this charge the jury was again told that any disposition was wrongful if it was not with the consent prior to or the acquiescence afterward of the mortgagee, to which defendants' counsel again excepted.

I think that charge cannot be sustained. While a mortgagee may under special circumstances bring an action to recover damages for the impairment of his security, though he has not the right of immediate possession (5 Am. & Eng. Ency. of Law [2d ed.], 1001; 5 Rul. Cas. Law, 474), as a general rule a mortgagor rightfully in possession of the mortgaged property as here has the right to sell the property until he makes default and the purchaser takes the title subject to the lien of the mortgage. (*Hull* v. *Carnley*, 11 N. Y. 501; 17 id. 202; *Goulet* v. *Asseler*, 22 id. 225; *Manning* v. *Monaghan*, 23 id. 539; 28 id. 585; *Hathaway* v. *Brayman*, 42 id. 322; *Hamill* v. *Gillespie*, 48 id. 556; *Martin* v. *Lewinski*, 54 App. Div. 573.) And that is so whether the purchaser knows or is informed of the mortgage or not. The purchaser gets the same title as the mortgagor had and no more and no less. (*Hamill* v. *Gillespie*, *Hull* v. *Carnley*, *supra*.) But a different rule prevails after default has been made by the mortgagor. (*Hall* v. *Sampson*, 35 N. Y. 274; *Kimball* v. *F. & M. Nat.*

*Bank,* 138 id. 500; note to *Wilkes* v. *Southern Ry. Co.,* 21 Am. & Eng. Ann. Cas. 79, 80, 81.)

There are cases where an owner of mortgaged property has been held liable to the mortgage holder in an action at law for damages for the impairment of the security though the mortgage holder had neither the title nor possession of the property. Such is the case of *Van Pelt* v. *McGraw* (4 N. Y. 110), where an action at law by the mortgagee of real estate was sustained against the mortgagors' grantee, for fraudulently removing rails and timber from the land covered by the mortgage, thereby impairing the security, it appearing that the mortgagors were insolvent and the premises inadequate security. And in *Yates* v. *Joyce* (11 Johns. 136) even a judgment creditor was permitted to maintain an action against an insolvent owner of the property to recover damages for pulling down and carrying away buildings from the land. The case of *Manning* v. *Monaghan* (*supra*) was a chattel mortgage case. It was brought to recover damages for the seizure and sale of household furniture which one Schenck had mortgaged to the plaintiff. Subsequently, the defendant Monaghan recovered a judgment against Schenck, and an execution having been returned unsatisfied, a receiver in supplementary proceedings was appointed and the property sold by the receiver. The sale took place before the mortgage debt became due, and the question was, whether the mortgagee had any right of action for the impairment of his security. The case was twice before the Court of Appeals. The plaintiff's recovery was sustained by the intermediate appellate courts, but in each instance the Court of Appeals reversed the judgments. The first reversal (23 N.Y. 539) was upon the ground of a mistrial, because the jury had rendered no general verdict, but merely answered specific questions not covering the whole case. The second reversal (28 N. Y. 585) was upon the ground that an erroneous rule of damages was adopted. The rights of the mortgagee were discussed upon both appeals, but the judges were not in entire accord upon that question. Upon the first appeal Chief Judge COMSTOCK held that the mortgage not being due, the mortgagor had a continuing right of possession at the time of the seizure and sale of the goods, and that, therefore, mere seizure

and sale attended with no special injury afforded no ground of action, although the sale was made in hostility to the lien; that there was a right to sell, subject to the plaintiff's mortgage, and the attempt to sell in defiance of that security, being in legal contemplation nugatory, occasioned no damage to the plaintiff apart from the special circumstances attending the transaction. He then holds that a case might be made out because of the manner of the sale to various purchasers unknown, by which the property was dispersed as effectually beyond the reach of the mortgagee as though it had been thrown into the sea, and he illustrates and reinforces his view by supposititious cases and finally suggests the following propositions:

" 1. When chattels are covered by a valid mortgage with a continuing right of possession in the mortgagor, his interest, and that only, can be rightfully taken and sold on behalf of his creditors, and with the sale possession may be delivered.

" 2. On the authority of the cases in this court above mentioned, it ought to be conceded that the mortgagee has no legal ground of action, although the sale is hostile to his right, provided the property is not dispersed or placed beyond his reach. Actual injury must be the ground of his complaint.

" 3. Property thus situated should be sold in mass, and subject to the lien. If sold otherwise, if it is scattered and dispersed, the proceeding is both a wrong and an injury, provided the mortgagor is insolvent, and the debt to the mortgagee is not otherwise secured. For such an injury an action will lie."

When the case was in the Court of Appeals the second time, Judge COMSTOCK was not in the court. The opinion was written by Chief Judge DENIO, who also wrote upon the first appeal. Four of the judges concurred with Judge DENIO for reversal, two were for affirmance, and one was not prepared to vote. Judge DENIO in his opinion says: " Certain positions respecting actions of this character are perfectly well established in this court, viz.: (1) That a mortgagor of chattels remaining in possession before default, under a clause entitling him to such position, like the one in this mortgage, has an interest in the property which is the subject of levy and sale on

execution against such mortgagor.  The seizure by the receiver was in the nature of a levy on execution so far as this case is concerned.  (2) That although the interest which passes to the purchaser at such sale is only such an interest as the mortgagor had, yet that the sheriff and the parties promoting the sale are not trespassers if the sale is in general terms, without any notice being taken of the existence of the mortgage."

After referring to the cases of *Hull* v. *Carnley* and *Goulet* v. *Asseler* (*supra*) and commenting thereon, Chief Judge DENIO continues: "The defendants' counsel, after his main position that the action could not be sustained was overruled, sought to have the damages assessed upon the footing of an action on the case for an injury to the plaintiff's reversionary interest, by confining the damages to the loss he had suffered by the dispersion of the property among the several purchasers; but the judge refused to charge the jury to that effect, and finally laid down the rule of damages precisely as though the plaintiff had a present right of possession, and the action had been trespass or trover for an immediate injury to that possession."

After holding that in any view of the case this direction was erroneous, Judge DENIO concludes as follows: "It remains only to mention, that upon the former appeal in this case, the judgment was reversed solely because there had been a mistrial in the Superior Court, and that no other point was adjudged or attempted to be.  This is explicitly stated in the report.  Some of the judges were of opinion that where a sale on execution against a mortgagor (the instrument containing the provision found in the one before us) has been made, the mortgagee may maintain an action in the nature of trespass on the case, for an injury to his interest as a reversioner.  I did not participate in that view, as may be seen from my observation in that case. (23 N. Y. Rep. 539.)  I forbear to enlarge upon that question, because the present case does not present it, and because I have already sufficiently explained my views upon that question, in the cases to which I have referred.  I am in favor of reversing this judgment."

While the judges were not in entire accord, as has been stated, I think it clear that at least a majority of them finally

agreed upon the proposition that a mere sale of the articles was not sufficient to create a liability. That, I think, is this case.

Appellants make many other points as grounds for reversal, but none requires extended discussion. As to the contention that the indebtedness was not assigned to the plaintiff, it is sufficient to say that we think that both the debt and the collateral passed by the assignment.

Appellants also contend that the judge had no power to amend the complaint so as to substitute an entirely new cause of action for the one pleaded. It would seem from the demand for judgment that the plaintiff intended to state a cause of action in replevin, but after a prolonged colloquy between the presiding justice and counsel for the respective parties as to the nature of the action and the meaning of the complaint, it seems to have been finally conceded all around that it was not an action in replevin, and the demand appropriate to such action was eliminated and a demand for a money judgment substituted. Counsel for the respondent sets forth in his brief what he conceives was left of the complaint after it was finally amended. We need not determine whether a new cause of action was substituted or not, because in either view the complaint should be made definite and certain, containing a plain and concise statement of facts, as the Code requires, and not left to conjecture and to be determined with the aid of a colloquy which occurred on this trial. Formal application should be made at Special Term, seasonably, before the case is brought on for trial, for leave to amend the complaint in the form suggested in the respondent's brief, or in such other form as plaintiff may be advised.

As to the other points, it is enough to say that we do not think they merit discussion.

We think the complaint should not be dismissed, as the appellants contend, but that a new trial should be ordered. The judgment and order should, therefore, be reversed and a new trial granted, with costs to the appellants to abide the event.

All concurred; DE ANGELIS, J., not sitting.

Judgment and order reversed and new trial granted, with costs to appellants to abide event.