ROBERT J. DEAN et al., Appellants, v. HORACE K. THURBER, Assignee, etc., Respondent.

Plaintiffs held, as collateral security for the payment of certain promissory notes, U. S. bonded warehouse receipts for goods imported by the makers of the notes; they, having become insolvent, executed to defendant an assignment for the benefit of creditors. The assignee entered into an arrangement with plaintiffs and other creditors holding similar securities to the effect that he should take possession of and sell all of the merchandise. The warehouse receipts were thereafter delivered to him. He paid the duties, released the merchandise from bond and sold the same, deducting the duties paid. The property pledged failed to sell for enough to pay plaintiffs' notes. *Held*, that an action was not maintainable to compel the assignee to pay the duties out of the general fund in his hands; but that he was justified in deducting them from the proceeds of sales, and accounting to the secured creditors simply for the residue; that the pledging of the goods by the importers to the holders of their notes was subject to the government lien for duties, and defendant had no authority to use the general fund in his hands to enhance their security; that in taking and selling the goods under the arrangement the assignee was acting as agent for the plaintiffs, not in his official capacity as assignee, and the payment of the duties was a preliminary step he was compelled to take in their interest in order to get possession; and that plaintiffs, for what their security was deficient in paying their claim, had only the right to resort to and share in the common fund.

(Argued April 25, 1889; decided June 4, 1889.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 21, 1886, which reversed a judgment in favor

of plaintiffs, entered upon the report of a referee, and granted a new trial.

The complaint in this action alleged, in substance, that plaintiffs were the owners of certain promissory notes executed by the firm, Herron & Spencer, as collateral security for the payment of which they held United States bonded warehouse receipts for goods imported by the makers; that said firm, having become insolvent, executed an assignment for the benefit of creditors; that plaintiffs, together with other creditors holding similar securities, entered into an arrangement with defendant, the assignee, to the effect that the latter should take possession of the merchandise in the bonded warehouses, sell and dispose of the same and account to the lienors for the proceeds. That, in pursuance of this agreement, the warehouse receipts were transferred to defendant, who paid the duties on the goods in bond and has sold the same. The complaint asked for an accounting, etc.

The further material facts appear in the opinion.

*Frederic R. Coudert* for appellants. The lien of the government was a preferred debt that the assignee was bound to pay. (*Richardson* v. *Thurber*, 104 N. Y. 606; *Farwell* v. *Importers' Bk.*, 90 id. 483; *Smith* v. *Cornell*, 111 id. 554; *Harrison* v. *Peck*, 56 Barb. 251, 256; *Field* v. *U. S.*, 9 Pet. 182; *U. S.* v. *Fisher*, 2 Cranch, 358; *Meredith* v. *U. S.*, 13 Pet. 486; *Beaston* v. *Bank*, 12 id. 102; *U. S.* v. *Hooe*, 3 Cranch, 73; *Brent* v. *The President*, 10 Pet. 396; *Warner* v. *Jaffray*, 96 N. Y. 248.) The duties paid by the assignee with the moneys of the assignors prior to January 5, 1885, for the debt due by assignors, assignee and defendant personally, were not chargeable against the proceeds from the sale of the merchandise pledged to secure the notes taken up by the plaintiffs, who were not at any time liable therefor. (*Brent* v. *The President*, 10 Pet. 596; *U. S.* v. *Hooe*, 3 Cranch, 73; *Lewis* v. *U. S.*, 2 Otto, 618; *Beaston* v. *The Bank*, 12 Pet. 102; *Field* v. *U. S.*, 9 id. 182; *U. S.* v. *Fisher*, 2 Cranch, 358; *Meredith* v. *U. S.*, 13 Pet. 486;

*Bayne* v. *U. S.*, 3 Otto, 642; *U. S.* v. *Abron*, 3 Mason, 126; *U. S.* v. *George*, 6 Blatch. 406; *U. S.* v. *Lyman*, 1 Mason, 482; *In re Rosey*, 8 Nat. Bk'y Reg. 509; *U. S.* v. *Duncan*, 4 McLean, 607; U. S. R. S. §§ 3466–3468; *Moffet* v. *Henderson*, 18 J. & S. 211; *Harper* v. *New Brig*, Gilpin, 536; *U. S.* v. *Preston*, 4 Wash. C. C. 446; *Corrall* v. *Latters*, 1 Newb. 432; *Hay* v. *Columbus*, 23 Mo. 232.) The defendant is not entitled to be subrogated to the specific lien of the United States. (*Foster* v. *Trustees*, 3 Ala. [N. S.] 302; *Hayes* v. *Columbus*, 23 Mo. 232; *U. S.* v. *Rousmainers*, 2 Mason, 373; *Harper* v. *New Brig*, Gilpin, 536; *Rogers* v. *Myers*, 68 Ill. 92, 97; *Miller* v. *Montgomery*, 31 id. 350; *Ingraham* v. *Gilbert*, 20 Barb. 151, 152; *Booth* v. *Cleveland Co.*, 6 Hun, 591, 595; *Ingells* v. *Morgan*, 10 N. Y. 178; *U. S.* v. *Preston*, 4 Wash. C. C. 446; *Plock* v. *Pratt*, 2 id. 490; *U. S.* v. *Murdock*, 2 Cranch C. C. 486; *Conrad* v. *Pacific*, 6 Pet. 28.) The assignee does not become a trustee except for such creditors as assent to the assignment; nor will an assent to the assignment be presumed on the part of creditors, but such assent must be proven by proper evidence. (*Warner* v. *Jaffray*, 96 N. Y. 248, 254; *Faulkner* v. *Hyman*, 5 East. Rep. 729 [731].) The rule as to respective equities and marshaling of assets has no application. (*Rogers* v. *Myers*, 68 Ill. 92.) Only assenting creditors had any right in the assigned property, and as none of the creditors have assented to the terms of the assignment, none of them have any rights therein. (*Beaston* v. *The Bank*, 12 Pet. 102; *Lewis* v. *U. S.*, 92 U. S. 618 [623].) The primary obligation for the payment of the duties rested with Herron & Spencer, not with R. J. Dean & Co., and not with the merchandise. (*Meredith* v. *U. S.*, 13 Pet. 486.) When the defendant became assignee of Herron & Spencer, by the laws of the United States he became obligated directly to the United States to pay that debt for duties. (*Beaston* v. *The Bank*, 12 Pet. 102; *Lewis* v. *U. S.*, 92 U. S. 618; Colbrokke on Col. Secur. § 210.) The rights and equities of the plaintiffs to be indemnified from the assigned estate are

superior to those of a general creditor, and entitle them to all the equities that do not infringe on stronger equities of other creditors. (Colbrokke on Col. Secur. § 210 ; Pomeroy's. Eq. Jur. § 1414; *Morris* v. *Alwine,* 22 Penn. 441, 443 ; *Klien's Appeal,* 27 id. 43, 46.) The duties were a *bona fide* debt of the assignors as well as the assignee to the United States, and ·their payment discharged that debt. (*Sullivan* v. *Miller,* 106 N. Y. 635, 643 ; *Field* v. *U. S.,* 9 Pet. 182 [201] ; *Beaston v. Farmers' Bk.,* 12 id. 102 ; U. S. R. S. 3466, 3467; *Meredith* v. *U. S.,* 13 Pet. 486; *Lewis* v. *U. S.,* 92 U. S. 618, [623] ; *New England Co.* v. *Gilbert,* · 91 N. Y. 153 [168] ; *Richardson* v. *Thurber,* 104 id. 606, 612.)

*E. More* for respondent. On marshaling assets of insolvent debtors, the property on which the creditor has a specific lien, primarily, should be charged, and the liability of the debtor or of his assignee should be held that of surety ; and when the assignee pays off a lien, he becomes subrogated to the creditor's lien. (Sheldon on Subrogation, §§ 11, 23, 35, 88 ; Story's Eq. §§ 567, 635 ; 14 N. B. Reg. 139 ; *In re Kirtland,* 2 Hughes, 208 ; 13 Kansas, 251 ; *McCormack* v. *Irwin,* 35 Penn. 113 ; *Comstock* v. *Drohan,* 71 N. Y. 9 ; Dixon on Subrogation, chap. 2, p. 22 ; *Flagg* v. *Thurber,* 14 Barb. 196 ; *Ferris* v. *Crawford,* 2 Denio, 595 ; 8 Mo. 189 ; *Dias* v. *Bouchard,* 10 Paige, 445 ; *Conch* v. *Delaplaine,* 2 N. Y. 397 ; *Gans.* v. *Thieme,* 93 id. 232 ; *Barns* v. *Mott,* 64 id. 401 ; *Twombly* v. *Cassidy,* 82 id. 159 ; *Cole* v. *Malcolm,* 66 id. 366 ; *Fiacre* v. *Chapman,* 35 N. J. Eq. 463 ; *Sandford* v. *McLean,* 3 Paige, 122 ; *Wilkes* v. *Harper,* 1 N. Y. 586 ; 2 Barb. Ch. 338.) Where the government is entitled to priority a surety for the debtor on paying the debt will be subrogated. (Sheldon on Sub. § 88 ; *Hunter* v. *U. S.,* 5 Peters, 182 ; *Richeson* v. *Crawford,* 94 Ill. 165 ; *Regina* v. *Salter,* 1 Hurls. & Norm. 274.) Assignees in bankruptcy will, upon redeeming pledges made by the bankrupt, be subrogated to the ·rights of the pledgees until the fund for general distribution is made good from the proceeds of the pledges redeemed. (Sheldon on

Sub. § 23; *McLean* v. *Cadwal'ader*, 15 N. B. Reg. 383.) The government's first lien was not confined to the goods in its possession, but covered all the assigned estate. (*Conrad* v. *Atlantic Ins. Co.*, 1 Peters, 439; *United States* v. *Hack*, 8 id. 271; *Brand* v. *Bk. of Washington*, 10 id. 596; *Forsyth* v. *Clark*, 3 Wend. 654.)

PER CURIAM. This appeal presents this question: When imported goods, stored in a bonded warehouse, are held by parties, through the possession of the warehouse receipts, as collateral security for the payment of promissory notes, and the makers of the notes become insolvent and assign their property to an assignee for the benefit of their creditors, should the moneys paid by the assignee for duties, owing to the United States government, be charged against the fund in the assignee's hands, or against the proceeds of the sale of the goods; where the assignee's possession and right to dispose of them were pursuant to an arrangement between him and the parties holding the warehouse receipts, by which he should effect for them a realization upon their security? This question, under the circumstances of this case, is not, perhaps, free from difficulty. The General Term, reversing a judgment recovered by the plaintiffs against the assignee, have decided that the payments of duties were a charge against the goods, and we think their judgment the correct one.

The plaintiffs had guaranteed the payment of the notes of the insolvent assignors, and, by taking them up from their holders, thus became possessed of the United States bonded warehouse receipts, which accompanied the notes as collateral securities for their payment. The assignee entered into an arrangement with plaintiffs and with other creditors, possessed of similar securities for their claims, by which all of this merchandise should be concentrated in his possession, in order the better to control the market for their sale. The warehouse receipts were delivered to him by the parties, and he, from time to time, paid the duties, released the merchandise from bond and effected sales of it. The result proved the

wisdom of the arrangement, in an increase of the price obtained upon sales, over what had been the ruling market-price.

The plaintiffs contend that as there was no agreement with respect to the payment of the duties, and as their payment was made by the assignee from the moneys of the assigned estate voluntarily and by no request of theirs, he simply discharged a legal obligation imposed upon him, in paying the assignors' debt to the United States, and they cannot be charged with such payment.

As the property pledged failed to sell for enough to pay the debt to them, after charging against the proceeds the sums paid for duties, the loss of this item of expense, they insist, must fall upon the common fund in the assignee's hands. The theory of the plaintiffs is that the duties constituted the personal debt of the insolvents, which was preferred by the law over all other debts, and which their assignee was bound to pay under the command and the sanction of the United States statute. The General Term met this view by holding, in substance, that the assignee, in taking the goods into his custody for sale, under the arrangement mentioned, was really acting for the plaintiffs in converting the goods into money, and, by the agreement, was bound to account to them for the proceeds, as would any agent in a transaction for others. They held that the payment of the expenses incurred by the goods, including the government duties, was a preliminary step which he had to take for and in the interest of the plaintiffs, in order to possess himself of the goods and to realize their value. We think this theory of an agency for the parties, growing out of the contractual arrangement referred to, sufficiently disposes of the plaintiffs' contention. Under the agreement by which the secured creditors surrendered to Mr. Thurber, the assignee, their warehouse receipts, for the purpose of controlling the market and creating higher values, he cannot be deemed to have acted in his official capacity as assignee. He merely was an agent for the carrying out of a scheme, by which the secured creditors should realize more for their claim than would have been possible if

each had acted separately  Apparently, he was individually ·concerned in the promotion of the scheme, for a bank which he represented.  Therefore, in what he did with the goods, he acted in the plaintiffs' place, and bound them by his acts and not the assigned estate.

These goods were subject to a lien in favor of the government for the duties payable by their importer, and their pledge by the importer to others was, obviously, subject to that lien.  What the creditors obtained was a second lien. The assignors could have paid the duties without removing the goods, and, if they had done so, the security of the creditors would have been strengthened *pro tanto ;* but they were not bound to do so.  When the pledgees came to enforce their security they would, in the first instance, be obliged to clear the pledged property of the government lien ; for, otherwise, possession by them was impossible for any purpose. The assignee could not, of course, do anything, as such, to affect the plaintiffs' security to their prejudice ; but neither could he use the funds of the assigned estate in his hands to enhance that security by discharging the lien for duties, subject to which the plaintiffs had taken and held their security. For these funds were subject to the claims of the body of creditors, and the assignee could not make a voluntary payment to their prejudice.  He could not give to the plaintiffs a greater preference nor any more advantageous a position towards the estate, than they held at the time when the assignment was made.  Even if we were to assume that the payment of the securities was a voluntary one, the assignee could not by doing so change the equitable rights of the creditors, as they existed at the time the insolvents assigned their property in trust for their benefit.

Applying those equitable principles, which govern in the marshaling of assets, we hold that the plaintiffs, for what their security is deficient in paying on their claim, have only the right to resort to the common fund ; and that they acquired no right to the repayment of the sums expended for duties by the assignee of the insolvent debtors.

The order appealed from should be affirmed, with costs to the respondent.

All concur, except GRAY, J., not voting.

Order affirmed and judgment absolute against appellants.