The following is the opinion of the referee:
Thomas Allison
Referee. By an order of this court, dated the 28th day of October, 1889, and on that day entered, a receiver of the defendant corporation was appointed.
*891 Said defendant had theretofore and on February 13, 1889, made a chattel mortgage to secure the payment of fifteen notes due at different times and in the aggregate for the sum of $3,000 and interest, of which $2,000 and interest still remains unpaid.
On October 25, 1889, three days prior to the appointment of the receiver, three judgments were entered against this corporation and three executions thereon were issued to the sheriff and a levy thereunder made upon a portion of the property covered by said mortgage. These executions were in favor of William Elliott Hardy and were in the aggregate for $4,823.42 and interest thereon from October 25, 1889.
The situation being as above stated, on or about December 16, 1889, the respective attorneys for the receiver, for the judgment creditor, for the chattel mortgagee and for the corporation, consented to an order, which was thereupon made by the court, which directed the receiver to sell the property covered by said levy and said chattel mortgage, except a portion of the property covered by the mortgage upon which Corbett & McAuliff claimed a lien irrespective of the mortgage.
By that order the sale was to be made by the receiver through Kearney & Tan Tassel 1 as auctioneers, and free of all claims and liens whatsoever, and the proceeds arising from such sale were “to be substituted for and take the place of the property sold and to be subject to the same liens as existed against the property, and the rights of all the parties to remain in full force and effect as they were at the time of the sale.”
Said order also appointed me referee “ to hear and determine the rights, liens and priorities of claims to said property or proceeds,” and further provided “that from the proceeds of said sale shall first be paid the expenses of the sale, and the balance to be paid over on the coming in and confirmation of the report of the referee as therein provided.”
On the hearing before me the receiver, mortgagee, judgment creditor and said Corbett & McAuliff all appeared by counsel.
Corbett & McAuliff gave some evidence, all of which was subsequently stricken out by me, on the receiver’s motion, when it appeared that the only claim made by them, or sought to be established by any evidence they had to offer, so far as the property sold under said order or its proceeds are concerned, was that of general creditors of the corporation, and that therefore they had no specific lien upon or right to priority of payment out of said property or its proceeds.
By the evidence before me the validity and existence of the chattel mortgage, and that $2,000 and interest and protest fees were due thereon, and that John McCormick was the owner and holder thereof and of the debt secured thereby, were fully estab-’ lisked and were not questioned.
The recovery of the judgments by William Elliott Hardy and the issuance of the three executions thereon and the formal, levy by the sheriff thereunder on October 25,1889, upon the property, the proceeds of which are in question here, were likewise established by the evidence.
*892 It was also established that the gross proceeds of said sale were $4,372.50, and the auctioneer’s bill,' $264.67, leaving $4,107.83 as the net proceeds of sale held by the receiver. The amount of the auctioneer’s bill was conceded to be correct in view of the terms of the order of the court under which the sale was made.
The contention of the parties is as to the proper disposition to be made by the receiver of the $4,107.83, net proceeds of sale, the said mortgage debt being over $2,100 and tne said judgment debts being over $4,800 in amount.
The receiver contends that he should be declared to have a lien upon this $4,107.83 for his compensation for his services in the premises and that such compensation should be fixed at five-per cent upon the whole of said sum as the usual rate of receiver’s commissions, and that the sum thus awarded to him should be deducted pro rata from the respective shares of the mortgagee and judgment creditor in said proceeds; and that subject to such lien so pro rated, the said proceeds should be applied first to the payment of the mortgage and then to the payment of the executions.
To this disposition of the fund the execution creditor assents.
But the mortgagee dissents. He claims that his mortgage is the only specific lien on this fund, That the levy of the sheriff created no lien on this property, and that consequently there is no-lien by virtue thereof on the proceeds of its sale. That any surplus after paying off the mortgage in full should be held and accounted for by the receiver as part of the general fund held by him.
The mortgagee also claims that he is not chargeable with any commissions or other compensation, of the receiver and that uMer the order of reference the referee has nothing to do with the question of the receiver’s compensation and further that if the referee does pass on that question, yet he must hold that any allowance made therefor, and charged to the mortgagee, is an 'expense incurred by the latter upon a sale of the property under the mortgage and secured thereby and payable to the mortgagee out of the proceeds of sale in priority and preference to any payment to any subsequent lienor or claimant.
The mortgagee claims that the levy under the executions created no lien on the property in question for the reason that at the time such levy was made the corporation had no leviable interest in such property ; that .at such time the chattel mortgage was due, default had been made thereon and the legal title to and right to-possession of the mortgaged chattels were vested in the mortgagee, and the corporation then had no legal title to or interest in the said chattels, but only a chose in action in connection therewith, a •right in equity to redeem the chattels from the mortgage and that this right, this chose in action was not leviable property.
It is well settled that a chattel mortgage does not, like a mortgage of real estate, merely create a lien on the mortgaged premises, leaving the legal title thereto in the mortgagor, but passes such legal title to the mortgagee. It is equally well settled that upon default in the payment of a chattel mortgage this legal- title *893 becomes absolute at law. As a consequence of these principles it has been repeatedly held, and is the law in this state, that the mortgagor of chattels, has no leviable interest therein, either prior to or after default upon the mortgage, unless by the terms thereof the mortgagor has, at the time of the levy, a right to the possession of the mortgaged chattels for a definite time.
It is unnecessary to cite here the authorities for the propositions above stated; they are familiar and abundant and many of them may be found in Smith on Chattel Mortgages,- 62-78.
These propositions of law do not seem to be disputed herein. Their application to this case is, however, denied.
The receiver and judgment creditor claim that in this case the mortgagor, the corporation, had the right to the possession of the mortgaged chattels for a definite period and that whether this was so or not, yet by reason of the special circumstances under which the sale was made the proceeds thereof are subject to the lien of the three executions mentioned above.
The claim that the mortgagor had a right to the possession of these chattels for a definite period is based on the terms of the mortgage.
It is said that there is no clause in the mortgage providing that upon default in the payment of any one of the fifteen notes secured by this mortgage the whole $3,000; the total of all the-notes, should become due.
Mo specific provision to that effect was necessary in order to-vest the absolute legal title in the mortgagee as fully and absolutely as if the whole debt secured by the mortgage were due and default made in its payment. The law gives that operation to a default in the payment of an installment where the terms of the mortgage do not provide to the contrary. Halstead v. Swartz, 46 How. Pr., 289; Willis v. O'Brien, 3 J. & S., 537.
But the mortgage in question is by its terms upon condition that it shall be void if the mortgagor pays to the mortgagee “ the just and full sum of $3,000 by installments evidenced by ” the said fifteen notes, each of which is then described in detail. The mortgage then provides “ that in case default shall be made in the payment of the said surp above mentioned, as herein provided, * * * the said sum of $3,000 shall become instantly due and payable and then it shall and may be lawful,” and the mortgagor doth thereby authorize the mortgagee to take possession of the mortgaged chattels. It further provides that “ until default be made in the payment of the said sum of money as herein expressly provided for ” the mortgagor is to remain in the peaceable possession and enjoyment of the mortgaged chattels.
The mortgage also, in terms, provided that if prior to the maturity of either of said fifteen notes any attachment or other process against the property of the mortgagor was issued or any judgment was entered against the mortgagor, the said “$3,000 should then become instantly due and payable, and then it shall and may be lawful,” and the mortgagor thereby authorized the mortgagee to take possession of the mortgaged chattels.
Under these provisions there was an immediate right of posses *894 sion in the mortgagee, and no right of possession for a definite period in the mortgagor, upon and after -a default in the payment of any one of the fifteen notes or upon and after the entry of any judgment against the mortgagor or the issuance of any process against its property.
The facts proven establish a case within ea¿h of these provisions in this mortgage. Default was made in the payment of one of these notes on August 10, 1889, and in the payment of another on October 10, 1889. The three judgments were entered against the mortgagor on . October 25,1889, and on the same day the three executions were issued against its property and some of the notes were not payable by their terms until after October 25, 1889. Bach of these states of facts existed prior to the levy by the sheriff, and each of them had by the terms of the mortgage instantly upon their occurrence destroyed all leviable interest of the mortgagor in this property.
But it is claimed that the mortgage contained a clause providing that the mortgagee should not be entitled to the possession of the mortgaged chattels until after giving five days’ nótice to the mortgagor.
The mortgage does not so read. It provides that upon default made in payment, on the entry of judgment or issuance of process, .as above mentioned, “ then, in the said events, the said sum of $3,000, herein mentioned, shall become instantly due and payable, and then it shall and may be lawful for ” and the mortgagor authorizes the mortgagee “to enter ” any place where the mortgaged chattels may be “ and talce possession of same and carry away the said goods and chattels after giving five days’ written notice to party of the first part, at office of Blandy & Hatch, attorneys, 55 Liberty street, New York city, and to sell and dispose of the same for the best price they can obtain.”
The very object and purpose of these provisions clearly was to prevent the mortgagor from having any interest in these chattels which should be leviable upon under any legal process against them, and to that end to provide that any right of the mortgagor to possession should terminate and the right to possession vest instantly in the mortgagee, whenever any one note was not paid at its maturity, or any judgment should be entered against the corporation or any legal process be issued against its property.
The five days’ notice is not made a condition precedent to the maturity of the whole-debt upon the happening of either of the contingencies named, nor to the right of the mortgagee to thereupon take possession, but is made, and only made, a condition precedent to the right to remove and sell the property after possession has been taken.
The mortgagee was fully protected by the right of instant possession and the mortgagor was protected against unnecessary sacrifice by the right to five days’ notice prior to removal or sale, within which to raise the money and redeem the chattels or secure the attendance of bidders at its sale.
My conclusion is that the levy under the three executions created no lien on the mortgaged chattels, and the judgment creditor *895 has no lien on the proceeds of the sale, and any surplus proceeds remaining after satisfying the lien of the mortgagee must be held by the receiver as part of the general fund in his hands subject to the equal claims of all the general creditors of the corporation.
It is further urged that the mortgagee, with the consent of the receiver, sold the mortgaged chattels in parcels, and that as soon as the amount necessary to satisfy the mortgage was realized by such sale neither the receiver nor the mortgagee could sell any more of the chattels for account of any one, except the sheriff.
This claim is not valid. The receiver sold by consent of all parties. The principle of law appealed to in support of this claim is not applicable to the facts of this case. Its application assumes that the sheriff had a valid levy before the receiver was appointed. Such is not the fact. The levy created no lien. The judgment debtor had no leviable interest when the levy was made. He had merely an equitable right to redeem, unaccompanied by any right to possession of the chattels for any definite period, and this was a mere chose in action, and was not leviable upon under an execution. Hull v. Carnley, 11 N. Y., 501.
This situation continued until the receiver was appointed, when this equitable right, this chose in action, passed to the receiver wholly free from any lien of the executions, and so remained vested in the receiver until the sale was made. In the meantime and until such sale the legal title and right to possession of the mortgaged chattels remained in the mortgagee,' except in so far as he had consented to its being held by the receiver for the purpose of making the sale. It is not as though the mortgagee had made a sale in parcels before the receiver was appointed, so that the lien might then have attached between the time of the sale and the time of the receiver’s appointment, if during that time any part of the mortgaged chattels had been freed from the mortgage by the sale of the remainder thereof for a sum sufficient to satisfy the mortgage. There was no time between the levy of these executions and the appointment of the receiver at which these executions could have been effectually levied upon any part of these chattels. After the receiver’s appointment the corporation had no interest, either legal or equitable, in these chattels or their proceeds. Upon such appointment all the interest and property of the corporation as regards these chattels vested in the receiver, and no levy could thereafter be made thereon nor any lien attach thereto.
Therefore, when, after the receiver’s appointment, the sale took place and enough "of the chattels had been sold to satisfy the mortgage, even if that fact freed the remaining mortgaged chattels from the mortgage, the legal title to them vested in the receiver who then owned the equity of redemption therein and owned it also free of any lien by execution, as it was not leviable property. The mortgagee’s title did not cease and determine until the sale was made, and then the surplus proceeds belonged to the receiver.
Section 1412 of the Code has nothing to do with the question here considered. It speaks only of personal property pledged and not of such property mortgaged, and it merely re-enacts the old and long existing law on that subject and makes no change in the law *896 as to mortgaged chattels. In the case of a p ledge of chattels the legal title to them remains in the pledgor and the right to possession with the right to foreclose the pledge is all that passes to the pledgee. But in the case of a chattel mortgage the legal title passes to the mortgagee. Such a mortgage is a conditional sale.
Though the mortgagee has no interest as such in the questions above discussed and the only other parties to this reference, the receiver and execution creditor, agree in pressing the latter’s claim to the surplus proceeds of sale, yet I have deemed it my duty to examine these questions carefully and to decide them, as the receiver is an officer of the court and its custodian of this fund, subject to its orders, and to distribute it to those lawfully entitled thereto, and the general creditors not being parties to or heard herein would not be bound by any order made in this proceeding but could claim the fund, if entitled thereto, on the receiver’s final accounting notwithstanding such an order.
The receiver claims that he should be allowed commissions on the full amount of the proceeds of sale and that such commissions should be borne and paid pro rata by the mortgagee and the execution creditor. The aggregate of these creditors’ claims exceed the proceeds of sale and if the latter were held to have a specific lien thereon there would be no surplus to go the general fund and both such creditors would lose out of their share of the pro•ceeds \hepro rata sum charged to them if the receiver’s claim were sustained.
Having held that the execution creditor has no lien on these proceeds he cannot be charged with any commissions for-the receiver.
The question remains should the mortgagee be charged with any such commissions, and if so how much and is he entitled to be indemnified therefor out of these proceeds of sale.
In Dean v. Thurber, 115 N. Y., 35; 23 N. Y. State Rep., 623, the court of appeals held that the assignee having by consent of the pledgee of the goods of the assignor sold the pledged goods, and the whole of the proceeds of such sale having been necessary to pay the pledgee’s debts, the assignee in making such sale acted as the agent of the pledgee and made the sale as such agent and not as assignee; that as a consequence of such facts certain disbursements, necessary to the payment of duties to take the pledged goods out of bond, were made by the assignee as the agent of the pledgee and not as assignee and were chargeable to the fund realized on such sale and not to the general fund.
Within this rule the receiver in this case at bar, so far as he sold the chattels solely for the benefit of the mortgagee, that is, so far as the sale was necessary to produce the amount required to 2>av off this mortgage, acted as the agent of the mortgagee and not as receiver. As receiver he could not sell these goods without the consent of the mortgagee. He had no title to any part of them until the mortgage debt was paid. So soon as by the sale in parcels enough money to pay the mortgagee’s debt or claim in full was realized the right to sell further on the mortgagee’s account ended. Thereafter the receiver’s sale was on his own .account as receiver.
*897 By the terms of the mortgage, the mortgagee is entitled to retain and pay out of the proceeds of the sale of the mortgaged property not only his mortgage debt, but also “ all charges touching the same.” In other words the mortgage was a security, and •created a lien on these chattels, not only for the $8,000 and interest, but also for the expenses of its foreclosure. This lien for charges had the same priority as that for the debt itself. In order, therefore, to determine as the order of reference requires the extent and priority of the mortgagee’s lien, it is necessary for me to decide how much should be allowed for the charge incurred for the receiver’s services in the premises. Had the receiver rendered the same service as receiver, he would according to the usual practice and under the law been allowed five per cent, upon the amount received and paid out by him. It is fair and reasonable to allow the charge for the service here rendered at the same rate. The mortgagee, therefore, should be allowed five per cent on the amount of the portion of the proceeds of sale which are paid over to him in satisfaction of his debt upon the mortgage, such percentage to be paid over to the receiver in full of his services in so far as they were rendered for the benefit of the mortgagee.
The compensation of the receiver for his services in the premises as to or out of the balance of the proceeds of sale is a matter not before me for decision. Such balance of proceeds goes to the general fund, and is to be disbursed as a part thereof, and accounted for as a part thereof on his final accounting, and the commissions or fees of the receiver as such, and in respect to services rendered as such and for the benefit of the general fund, are not to be passed on in this reference.
The only matters here involved are the specific liens on this fund ; that is, the claims entitled to payment out of this fund in priority to the general creditors and as a specific fund.
The expenses of this reference should be determined by the court, and be allowed out of -these proceeds of sale.
Z. S. Sampson, for judgment creditors, app’lts; J. S. Bosworth, for general creditors, resp’ts; Hatch & Warren, for receiver.
Van Brunt, P. J.
We think the order appealed from should be affirmed for the reasons stated by the referee in his opinion, with ten dollars costs and disbursements.
Brady and Daniels, JJ., concur.